In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 04-2326

STS. CONSTANTINE AND HELEN
  GREEK ORTHODOX CHURCH, INC.,
  and JOHN W. DEMETROPOULOS,

*Plaintiffs-Appellants*,

*v.*

CITY OF NEW BERLIN and TELESFORE WYSOCKI,

*Defendants-Appellees*.

———————

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 02-C-0630—**J.P. Stadtmueller**, *Judge*.

———————

ARGUED NOVEMBER 2, 2004—DECIDED FEBRUARY 1, 2005

———————

Before POSNER, MANION, and EVANS, *Circuit Judges*.

POSNER, *Circuit Judge*.  This is a suit by a Greek Orthodox church (we'll call it the "Church") against a small town in Wisconsin (officially a "City") named New Berlin. There are additional parties on both sides, but there is no need to discuss them. The district court granted summary judgment for the defendants.

The suit is based on subsection (a)(1) of the cumbersomely titled Religious Land Use and Institutionalized Persons Act

of 2000 (RLUIPA), 42 U.S.C. § 2000cc. That subsection forbids a government agency to "impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly or institution—(A) is in furtherance of a compelling governmental interest; and (B) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc(a)(1). The Act was passed in the wake of the Supreme Court's decision in *City of Boerne v. Flores*, 521 U.S. 507 (1997), which invalidated the Religious Freedom Restoration Act of 1993 (RFRA), insofar as that Act regulated state as well as federal action, on the ground that it exceeded Congress's power under the enforcement clause (section 5) of the Fourteenth Amendment. See also *Guam v. Guerrero*, 290 F.3d 1210, 1219 (9th Cir. 2002); compare *O'Bryan v. Bureau of Prisons*, 349 F.3d 399, 401 (7th Cir. 2003). The drafters of RLUIPA sought in 42 U.S.C. § 2000cc(a)(2) to avoid RFRA's fate by limiting the scope of the new Act to (1) state regulations (statutory or administrative) that affect commerce, (2) programs that receive federal financial assistance, and (3) programs under which the agency makes "individualized assessments of the proposed uses for the property involved." By these limitations, Congress avoided having to rely solely on section 5 of the Fourteenth Amendment: Applications (1) and (2) are supported by Congress's spending and commerce powers, *Madison v. Riter*, 355 F.3d 310, 315 (4th Cir. 2003), and (3) codifies *Sherbert v. Verner*, 374 U.S. 398 (1963). *Boerne* reaffirmed *Sherbert* insofar as that case holds that a state that has a system for granting individual exemptions from a general rule must have a compelling reason to deny a religious group an exemption that is sought on the basis of hardship or, in the language of the

present Act, of "a substantial burden on . . . religious exercise." 521 U.S. at 512-14. *Sherbert* was an interpretation of the Constitution, and so the creation of a federal judicial remedy for conduct contrary to its doctrine is an uncontroversial use of section 5.

We held in *Charles v. Verhagen*, 348 F.3d 601, 610-11 (7th Cir. 2003), that RLUIPA is not unconstitutional on its face, that is, in all possible applications. The Sixth Circuit disagrees, and its case is now in the Supreme Court. *Cutter v. Wilkinson*, 349 F.3d 257 (6th Cir. 2003), cert. granted, 125 S. Ct. 308 (2004). No constitutional issue is raised in this appeal.

There is also no serious disagreement about the facts. By purchases made in 1995 and 1997 the Church acquired a 40-acre tract in a section of New Berlin zoned residential. It wanted to build a church on this land that would replace its existing church in the nearby city of Wauwatosa—a church that it was outgrowing because its congregation was getting larger. The tract it bought was bordered on one side by a Protestant church and on the other side by a parcel of land, belonging to another Protestant denomination, that the City had agreed to rezone to allow a church to be built on it.

In 2002 the Greek Orthodox Church applied to the City for permission to rezone a 14-acre chunk of its 40-acre property from residential to institutional so that it could build its church, which it estimated would cost $12 million. The New Berlin Planning Department, to which the application was first referred, expressed concern that should the parcel be rezoned for institutional use a school or other nonreligious facility might be built on it, instead of a church, were the Church unable to raise $12 million and as a result decided to stay put in Wauwatosa. To allay this concern the Church modified its application by coupling with the proposal for

rezoning the 14-acre parcel a proposal that New Berlin promulgate a "planned unit development [PUD] overlay ordinance" that would limit the parcel to church-related uses. A specialized form of zoning ordinance, a PUD "differs from the traditional zoning in that the type, density and placement of land uses and buildings, instead of being detailed and confined to specified districts by local legislation in advance, is determined by contract, or deal, as to each development between the developer and the municipal administrative authority, under broad guidelines laid down by state enabling legislation and an implementing local ordinance." *Old Tuckaway Associates Ltd. Partnership v. City of Greenfield*, 509 N.W.2d 323, 326 n. 1 (Wis. App. 1993).

The City's Director of Planning was satisfied with the revised proposal and recommended that the Planning Commission approve it, but the Commission disagreed and on its recommendation the New Berlin City Council voted the proposal down, precipitating this suit. Concern was expressed in the Commission's deliberations that if the Church didn't build a church on the property but instead sold the land, the purchaser would not be bound by the PUD. That was wrong. Nothing in the text of the PUD proposed by the Church, in the provisions of the New Berlin Municipal Code, or in the general property law of Wisconsin or elsewhere, suggests that the ordinance would lapse with the sale of the property. If the PUD said it was just limiting what *the Greek Orthodox Church* could do with the property, then a subsequent purchaser would not be bound. But since the PUD would restrict the use of the property, rather than just the conduct of its present owner, the Church's successors would be bound.

It is true that zoning ordinances are not the same as restrictive covenants that run with the land and so bind

subsequent purchasers. *Crowley v. Knapp*, 288 N.W.2d 815, 824 (Wis. 1980); *Exchange National Bank v. City of Des Plaines*, 336 N.E.2d 8, 13-14 (Ill. App. 1975). A covenant is a contract and an ordinance isn't—though a PUD is very close to being a covenant because, as the passage that we quoted from the *Tuckaway* case explains, it is the product of a deal between a developer and a municipality. No matter; a zoning ordnance has the same effect as a covenant because, unless worded to bind only the current owner, it limits the use of the land by whoever owns it, not just whoever owned it when the ordinance was enacted. *Old Tuckaway Associates Ltd. Partnership v. City of Greenfield, supra,* 509 N.W.2d at 325-26; *Biblia Abierta v. Banks*, 129 F.3d 899, 904 (7th Cir. 1997). In *Goldberg v. City of Milwaukee Board of Zoning Appeals*, 340 N.W.2d 558, 561 (Wis. App. 1983), the court was explicit that a zoning variance creates a restriction that runs with the land, just like a covenant; and there is no relevant difference between a variance and a PUD.

New Berlin's mayor suggested two possible courses of action that the Church might take. One was to apply for a conditional use permit, which would allow the building of the church without altering the zoning of the land. The problem was that the permit would lapse within a year unless construction began, New Berlin Municipal Code § 275-27(E), and it was infeasible for the Church to move that fast. If the Church waited to apply for the permit until it was within a year of starting construction, it would find it difficult to raise the necessary $12 million, since it could not assure donors that the church would actually be built. The statement in the City's brief that "it would not impose a substantial burden on the Church to wait to apply for a [conditional use permit] until it had its funds and plans in place" is unrealistic. Donors would be making contributions without any confidence that the contributions could be used

for their intended purpose.

The City argues that the one-year deadline could be extended. Not true: "No extension shall be made to a conditional use permit." *Id*. The repeated legal errors by the City's officials casts doubt on their good faith.

The other alternative suggested by the mayor was that the Church apply for a PUD that would overlie not an institutional rezoning but instead the existing residential zoning, so that if the Church sold the parcel rather than building a church on it, and if the City were correct that such a sale would void the PUD, the buyer could not make an institutional use of the property because the property would revert to being zoned residential. The Church declined to follow this route too. It seemed obvious that the mayor, unless deeply confused about the law, was playing a delaying game. The PUD proposed by the Church would have had the same effect as the one proposed by the mayor, namely preventing a nonreligious institutional use of the property by either the Church or its successors.

To prevail in this suit, however, the Church has to show first of all that the denial of its application for the rezoning with the PUD overlay has imposed a "substantial burden" on the Church. The district judge inferred from language in our *CLUB* decision (*Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752 (7th Cir. 2003)) that to satisfy this requirement the Church would have to show that there was no other parcel of land on which it could build its church. But in *CLUB* the plaintiff churches were challenging Chicago's zoning ordinance, which—unlike New Berlin's—allows churches to build in areas zoned residential, though it requires them to obtain a permit to build in areas zoned commercial. The requirement of seeking a permit, given that churches don't need one to build in a

residential zone, seemed to the panel majority in *CLUB* not to place a substantial burden on the churches. *Id*. at 761-62. The Church in our case doesn't argue that having to apply for what amounts to a zoning variance to be allowed to build in a residential area is a substantial burden. It complains instead about having either to sell the land that it bought in New Berlin and find a suitable alternative parcel or be subjected to unreasonable delay by having to restart the permit process to satisfy the Planning Commission about a contingency for which the Church has already provided complete satisfaction.

No doubt secular applicants for zoning variances often run into similar difficulties with zoning boards that, lacking legal sophistication and unwilling to take legal advice, may end up fearing legal chimeras. On that basis the City, flaunting as it were its own incompetence, suggests that the Church can't complain about being treated badly so long as it is treated no worse than other applicants for zoning variances. But that is a misreading of RLUIPA. A *separate* provision of the Act forbids government to "impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. § 2000cc(b)(1); see also *id*., § 2000cc(b)(2). The "substantial burden" provision under which this suit was brought must thus mean something different from "greater burden than imposed on secular institutions."

But if this provision is interpreted to place religious institutions in *too* favorable a position in relation to other land users, there is a danger that it will run afoul of the clause of the First Amendment that forbids Congress (and, by interpretation of the Fourteenth Amendment, state and local governments as well) to establish a church.

*Westchester Day School v. Village of Mamaroneck*, 386 F.3d 183, 189-90 (2d Cir. 2004). But that is not argued; and if it were argued a counterargument would be the vulnerability of religious institutions—especially those that are not affiliated with the mainstream Protestant sects or the Roman Catholic Church—to subtle forms of discrimination when, as in the case of the grant or denial of zoning variances, a state delegates essentially standardless discretion to nonprofessionals operating without procedural safeguards. *Civil Liberties for Urban Believers v. City of Chicago*, *supra*, 342 F.3d at 764; *American Jewish Congress v. City of Beverly Hills*, 90 F.3d 379, 383-86 (9th Cir. 1996) (en banc); see also *Employment Division v. Smith*, 494 U.S. 872, 884 (1990); *Akers v. McGinnis*, 352 F.3d 1030, 1041-42 (6th Cir. 2003).

On this construal, the "substantial burden" provision backstops the explicit prohibition of religious discrimination in the later section of the Act, much as the disparate-impact theory of employment discrimination backstops the prohibition of intentional discrimination. *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 990-91 (1988); *Finnegan v. Trans World Airlines, Inc.*, 967 F.2d 1161, 1164 (7th Cir. 1992); *In re Employment Discrimination Litigation Against State of Alabama*, 198 F.3d 1305, 1321 (11th Cir. 1999). If a land-use decision, in this case the denial of a zoning variance, imposes a substantial burden on religious exercise (the statute defines "religious exercise" to include the "use, building, or conversion of real property for the purpose of religious exercise," 42 U.S.C. § 2000cc-5(7)(B)), and the decision maker cannot justify it, the inference arises that hostility to religion, or more likely to a particular sect, influenced the decision.

The burden here was substantial. The Church could have searched around for other parcels of land (though a lot

more effort would have been involved in such a search than, as the City would have it, calling up some real estate agents), or it could have continued filing applications with the City, but in either case there would have been delay, uncertainty, and expense. That the burden would not be insuperable would not make it insubstantial. The plaintiff in the *Sherbert* case, whose religion forbade her to work on Saturdays, could have found a job that didn't require her to work then had she kept looking rather than giving up after her third application for Saturday-less work was turned down. But the Supreme Court held that the fact that a longer search would probably have turned up something didn't make the denial of unemployment benefits to her an insubstantial burden on the exercise of her religion. 374 U.S. at 399 n. 2; see also *Thomas v. Review Board of Indiana Employment Security Division*, 450 U.S. 707, 718 (1981); *Islamic Center of Mississippi, Inc. v. City of Starkville*, 840 F.2d 293, 298-99 (5th Cir. 1988); compare *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1228 (11th Cir. 2004).

So the City was not entitled to summary judgment. Ordinarily the sequel to our ruling would be a trial. But as we said earlier, the facts are not in dispute. The only possible uncertainty is legal; and we acknowledge the possibility that some subtlety of the Wisconsin law of property has eluded us and that there is some danger after all that the 14-acre parcel may somehow end up with a school or hospital on it rather than a church. But since the Church is perfectly willing to bind itself by whatever means are necessary not to sell the land for a nonreligious institutional use, and the City has expressed no other concern about the use of the land, the only question is whether the Church's proposal may contain some loophole that might permit (though doubtless with low probability) the eventual putting of the property to a nonreligious

institutional use. The closing of the loophole, if there is a loophole, does not require a trial in the district court or a further administrative proceeding of uncertain duration and, given the whiff of bad faith arising from the Planning Commission's rejection of a solution that would have eliminated the City's only legitimate concern, an uncertain outcome as well. All that is required is that we reverse, and instruct the district court to grant the relief requested by the plaintiffs but to stay its order for 90 days to give the City a chance to negotiate with the Church such arrangements as may be necessary to eliminate any possibility that the land might be put to a nonreligious institutional use without the City's consent. For example, if the City wants to substitute the mayor's second suggested alternative—the PUD ordinance overlaid on residential rather than institutional zoning—we assume that the Church would have no objection, at least no reasonable one, provided this is done promptly. Another alternative might be to make the institutional zoning with PUD overlay (the Church's proposal) conditional on the construction of a church on the property. We are sure that with the district judge's help the parties can work out a deal that will lift a substantial burden from the Church's shoulders without impairing any legitimate interest of the City.

REVERSED AND REMANDED, WITH DIRECTIONS.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*