### THE WILLIAMS ISLAND SYNAGOGUE, INC., Plaintiff,

v.

### CITY OF AVENTURA, Defendant.

### No. 0420257CIV.

United States District Court, S.D. Florida.

Feb. 24, 2005.

See also 2005 WL 121783.

Lawrence R. Metsch, of Metsch & Metsch, P.A., Miami, FL, for plaintiff.

Harriet R. Lewis, of Weiss Serota Helfman Pastoriza Guedes Cole & Boniske, P.A., Ft. Lauderdale, FL, for defendant.

## *ORDER GRANTING DEFENDANT'S CORRECTED MOTION FOR SUMMARY JUDGMENT*

UNGARO–BENAGES, District Judge.

THIS CAUSE is before the Court upon Defendant's Corrected Motion for Summary Judgment, filed December 29, 2005.

THE COURT has considered the motion and the pertinent portions of the record and is otherwise fully advised in the premises.

### *FACTS*

The following facts are derived from the facts to which the parties have stipulated, Defendant's statement of undisputed material facts and the deposition transcripts contained in the record. Plaintiff's statement of facts filed in support of its response to Defendant's motion for summary judgment does not contain a recitation of the facts in this case or dispute those facts put forth by Defendant; rather, Plaintiff only lists questions that it claims prevent the entry of summary judgment in Defendant's favor. Under Rule 7.5.D of the Local Rules of the United States District

Court for the Southern District of Florida, the Court deems Plaintiff to have admitted those material facts set-forth by Defendant that are supported by citation to the record.

Plaintiff Williams Island Synagogue, Inc. (Plaintiff or the synagogue) is a nonprofit Florida corporation whose congregation adheres to the principles and traditions of Orthodox Judaism. Rabbi Jonathan Horowitz has served as a pulpit rabbi, i.e. a rabbi chosen to perform certain pastoral and educational duties, to the synagogue since July 2000. Deposition of Jonathan Horowitz, at 9. Between thirty and fifty people on average would regularly attend religious services at the congregation in mid–2000, whereas now between thirty and fifty people on average attend weeknight services and between eighty and, on several occasions during winter months, up to two hundred people on average attend Saturday morning services. *Id.* at 27–28.

## I. *Facts relating to Plaintiff's substantial burden claim*

The Synagogue has operated in its present location at 2000 Island Boulevard since sometime in the mid–1990s. *Id.* at 22. This space, to which the Court shall refer to as the current location, has been partitioned to separate male and female congregants in a manner that conforms with the tenets of Orthodox Judaism and has existed in its present configuration for the past ten years. *Id.* at 49–50, Deposition of Julius Trump, at 23, 49.

Plaintiff, in its words, claims that "[three] problem[s] under Jewish law [are] presented" by the current location, Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, at 5, but has never retained an interior designer or other professional to assess how the current location may be reconfigured to alleviate or eliminate these problems, Horowitz Depo., at 48, 50. First, Plaintiff claims that female congregants who arrive late to prayer services must pass through the section reserved for men in order to get to the section reserved for female worshipers, creating a disturbance that distracts from prayer and the services. Plaintiff's Memo., at 5; Horowitz Depo., at 51–52. Second, the kiddush, or ceremonial blessing of wine and meal that follows Sabbath services, is prepared in the prayer area while services are ending, creating a distraction. Plaintiff's Memo., at 5; Horowitz Depo., at 53–54. Finally, Plaintiff claims that the north by northeast orientation of the current location prevents congregants from worshiping while facing toward Jerusalem in the east as required by Orthodox Judaism. Plaintiff's Memo., at 5; Horowitz Depo., at 55–57.

While being deposed regarding these problems with the current location, Rabbi Horowitz stated that tardy female worshippers now have the choice of walking through or around the men's prayer area and that it is equally distracting when either men or women arrive late to services. Horowitz Depo., at 68–69. Next, he explained that the distraction caused by the kiddush is the result of the female volunteers moving food and talking to one another as well as the need to relocate to the front of the room male congregants who have become accustomed to using particular seats near the kitchen. *Id.* at 65–67. Finally, he stated that Jewish law requires worshippers themselves, rather than the building in which they worship, to face toward Jerusalem during prayer. As the existing location has always faced north by northeast, this problem is now solved by allowing individuals to rotate their bodies or chairs to face toward the east while praying. *Id.* at 56–58. Rabbi Horowitz, however, testified that this rota-

tion creates an inconvenient distraction. *Id.* at 58.

Plaintiff claims that these three problems would be solved by allowing it to relocate to a 6,000 square foot space, to which the Court shall refer to as the proposed location, located in the ground floor level of a parking garage adjacent to the residential building housing the 2600 Island Boulevard Condominium, to which the Court shall refer to as the 2600 Building. Joint Pretrial Stipulation, at 16. The proposed location is accessible only through a twenty-foot wide service driveway now used for deliveries to the 2600 Building and by Williams Island residents as a walking and jogging path. *Id.*

## II. *Facts relating to Plaintiff's disparate treatment claim*

The 2600 Building includes a party room available exclusively to building residents and their guests for, among other uses, holiday and birthday celebrations and religious celebrations. Joint Pretrial Stip., at 16–17. This room can accommodate between eighty and one hundred people at a time. *Id.* at 17. The party room was designated as an accessory use to the 2600 Building under the appropriate zoning requirements at the time of the building's construction in September 1997. Affidavit of Joanne Carr, at 12.

The proposed location, the 2600 Building and the party room are located within a zoning district designated by Defendant as a Multifamily High Density Residential District ("RMF4"). Joint Pretrial Stip., at 17. Sections 31–143(f)(2) and (2a) of the City of Aventura Municipal Code provide that buildings, structures or land located within an RMF4 district may only be used for those uses approved within Multifamily Medium Density Residential Districts ("RMF3s"), high-rise apartments, publicly owned recreation facilities, assisted living facilities, uses accessory to these uses, and,

if first approved as a conditional use, "all uses permitted in the [Community Facilities] District." Section 31–147 governs the use of land within Community Facilities, or CF, districts. Sections 31–147(a)(1) and (a)(2) govern, respectively, those uses which are permitted as of right and those uses which require prior conditional approval; subsection (a)(1)(d) provides specifically that "[c]hurches or synagogues and other houses of worship" are among those uses permitted within CF districts, while subsection (a)(2)(d) lists, among other categories, "[p]rivate fraternal, civic, charitable, professional or educational nonprofit organizations" as requiring conditional approval for operation within CF districts. Section 31–73 of the municipal code governs the procedures and requirements for conditional use applications. Section 31–73(d) provides that the Community Development Department of the City of Aventura shall prepare a report summarizing the Department's assessment of whether a particular conditional use application satisfies the general criteria established by § 31–73(c).

As a result of the interaction of these statutory provisions, specifically § 31–143(f)(2a), while churches, synagogues and other religious institutions are entitled to operate within CF districts as of right, they require conditional approval before being allowed to operate within RMF4 districts. By comparison, activities and spaces that are accessory to permitted uses, such as the party room, are allowed as of right in RMF4 districts.

## III. *Plaintiff's conditional use application and procedural history*

On April 8, 2002, Defendant issued a Certificate of Use which authorized Plaintiff to use the proposed location for religious exercises. Joint Pretrial Stip., at 17. This certificate was subsequently revoked

by Defendant. *Id.* On December 20, 2002, Plaintiff applied for conditional use approval pursuant to § 31–73 to use the proposed location for religious exercises. *Id.* On November 6, 2003, the Community Development Department delivered a report to the City of Aventura City Commission recommending that Plaintiff's conditional use application be denied because the proposal did not make adequate provisions for parking and because the walkway to and from the proposed location would not provide safe pedestrian access. *Id.* On November 12, 2003, the City Commission conducted a hearing on Plaintiff's conditional use application and then denied the application on a five to two vote. *Id.*

On February 3, 2004, Plaintiff filed the pending two-count complaint, seeking injunctive relief and damages against Defendant pursuant to both the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc et seq., and the Florida Religious Freedom Restoration Act of 1998 ("RFRA"), Fla. Stat. § 761.

Count I of Plaintiff's complaint contains two claims under RLUIPA. Plaintiff's first claim, to which the Court will refer as the "substantial burden claim," argues that the City's decision to deny the conditional use application violates Plaintiff's rights under § 2000cc(a)(1).[1] Plaintiff's second claim, to which the Court will refer as the "disparate treatment claim," alleges that § 31–143(f)(2a) of Defendant's municipal code, to the extent it requires conditional approval by the City Commission before religious organizations such as Plaintiff may locate within certain zoning districts, violates §§ 2000cc(b)(1) and (b)(2) of RLUIPA,[2] because the groups which use the party room located in the condominium at 2600 Island Boulevard are comparable nonreligious assemblies which have been treated on more favorable terms than Plaintiff. Count II of the complaint claims that Defendant's denial of Plaintiff's conditional use application violates Florida Statute § 761.03(1) by imposing a substantial burden on Plaintiff's religious beliefs for the same reasons explained in its claim under RLUIPA.[3]

On March 10, 2004, Defendant filed a motion to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff lacked

---

1. Section 2000cc(a)(1) provides:
 No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution-
 (A) is in furtherance of a compelling governmental interest; and
 (B) is the least restrictive means of further that compelling governmental interest.

2. Section 2000cc(b) provides in pertinent part:
 (1) **Equal Terms**
 No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution.
 (2) **Nondiscrimination**
 No government shall impose or implement a land use regulation that discriminates against any assembly or institution on the basis of religion or religious denomination.

3. Section 761.03(1) provides:
 The government shall not substantially burden a person's exercise of religion, even if the burden results from a rule of general applicability, except that government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person:
 (a) is in furtherance of a compelling governmental interest; and
 (b) is the least restrictive means of furthering that compelling governmental interest.

standing to bring this action, that Plaintiff's complaint failed to state a claim for which relief could be granted and that RLUIPA and RFRA were unconstitutional to the extent that they operate to invalidate zoning regulations of general, nondiscriminatory applicability. On May 6, 2004, the Court entered an order denying Defendant's motion to dismiss. The Court found first that Plaintiff has standing to maintain this action because the complaint alleges that the November 12, 2003 denial of the conditional use permit resulted in an actionable violation of Plaintiff's rights under RLUIPA. The Court then concluded that Plaintiff's substantial burden claim stated a cognizable claim after finding persuasive authority for the proposition that the denial of a zoning variance may under certain circumstances force religious institutions, as a result of increased membership, to forego their religious precepts in violation of RLUIPA. *Accord Castle Hills First Baptist Church v. City of Castle Hills,* 2004 WL 546792 (W.D.Tex. Mar.17, 2004), *Westchester Day School v. Village of Mamaroneck,* 280 F.Supp.2d 230, 241–42 (S.D.N.Y.2003). The Court also concluded that Plaintiff's disparate treatment claim survived Defendant's Rule 12(b)(6) motion because Plaintiff stated a cognizable claim that it was required to submit to a certification process which did not apply to comparable private organizations, such as the 2600 Building's condominium association. Finally, the Court rejected Defendant's challenges to RLUIPA and RFRA based on the Eleventh Circuit's holding in *Midrash Sephardi, Inc. v. Town of Surfside,* 366 F.3d 1214, 1243 (11th Cir.2004),[4] that

RLUIPA does not exceed Congress's authority under § 5 of the Fourteenth Amendment, does not violate the Establishment Clause of the First Amendment and does not abridge state sovereignty in violation of the Tenth Amendment.

On June 8, 2004, Plaintiff filed a motion for partial summary judgment, asking the Court to find as a matter of law that Defendant's denial of Plaintiff's conditional use permit application has imposed a "substantial burden" on Plaintiff's exercise of its religious beliefs, as that term is used in 42 U.S.C. § 2000cc(a)(1); that Defendant has treated Plaintiff and non-party the 2600 Island Boulevard Condominium Association on less than equal terms in violation of § 2000cc(b)(1); and that RLUIPA and RFRA are constitutional. Plaintiff's evidentiary submissions in support of that motion for partial summary judgment consisted entirely of copies of its complaint, Defendant's answer and affirmative defenses, the Eleventh Circuit's decision in *Midrash Sephardi,* the Court's order denying Defendant's motion to dismiss and the affidavits of Julius Trump, Plaintiff's Director, and Rabbi Jonathan Horowitz. Rabbi Horowitz stated in his affidavit that Plaintiff's members were unable to worship in conformance with the tenets of Orthodox Judaism in their current location.

On July 6, 2004, Defendant filed a motion to strike the affidavit of Rabbi Horowitz pursuant to Federal Rule of Civil Procedure 56(e), which requires that affidavits filed in support of a motion for summary judgment "shall be made on per-

---

4. To the extent that Plaintiff's substantial burden claim can be understood as arguing that the synagogue's need to submit to the conditional use application process per se violates RLUIPA, the Court in her order denying Defendant's motion to dismiss observed that *Midrash Sephardi* rejects this argument. 366 F.3d at 1227 n. 11 ("Requiring churches and synagogues to apply for CUPs allows the zoning commission to consider factors such as size, congruity with existing uses, and availability of parking. We have found that such reasonable 'run of the mill' zoning considerations do not constitute substantial burdens on religious exercise.").

sonal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated herein."

On August 3, 2004, the Court entered an order denying Plaintiff's motion for partial summary judgment and denying Defendant's motion to strike. In denying the former, the Court held in part that summary judgment could not be entered in Plaintiff's favor based on the factual dispute created by the expert affidavit testimony introduced by Defendant to the effect that Plaintiff's members could worship in the current location in full conformance with the tenets of Orthodox Judaism. In denying the latter, the Court concluded that Rabbi Horowitz was an expert on the subject of Jewish law based on his education and experience and the fact that at least two circuit courts of appeal have relied on rabbinical testimony to determine the requirements of Orthodox Judaism.

Following the close of discovery, Defendant filed the pending motion for summary judgment as to all claims contained in Plaintiff's complaint.

## LEGAL STANDARD

Summary judgment is authorized only when the moving party meets its burden of demonstrating that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. The Supreme Court explained in *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), that when assessing whether the movant has met this burden, the court should view the evidence and all factual inferences in the light most favorable to the party opposing the motion.

The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of coming forward with proof of the absence of any genuine issue of material fact, the nonmoving party must make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrell*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir.1997); *Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

If the record presents factual issues, the court must not decide them, it must deny the motion and proceed to trial. *Environmental Defense Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir.1981).[5] Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Electric Supply Co. v. Continental Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir.1969). If reasonable minds might differ on the inferences arising from undisputed facts then the court should deny summary judgment. *Impossible Electronic Techniques, Inc. v. Wackenhut Protective Systems, Inc.*, 669 F.2d 1026, 1031 (5th Cir.1982); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[T]he dispute about a material fact is 'genuine.' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

Moreover, the party opposing a motion for summary judgment need not respond

---

**5.** Decisions of the United States Court of Appeals for the Fifth Circuit entered before October 1, 1981, are binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981).

to it with evidence unless and until the movant has properly supported the motion with sufficient evidence. *Adickes*, 398 U.S. at 160, 90 S.Ct. 1598. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg*, 370 F.2d 605, 611–12 (5th Cir.1967). The Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party. *Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. 2505.

### ANALYSIS

#### I. *Plaintiff's substantial burden claim*

■ Section 2000cc(a)(1) of RLUIPA prohibits zoning decisions that substantially burden a religious assembly's ability to adhere to its beliefs unless such a decision is supported by a compelling governmental interest. In order to determine whether Defendant is entitled to summary judgment on Plaintiff's substantial burden claim, the Court must proceed in two steps: (1) based on the undisputed facts established by the record, has Defendant's denial of Plaintiff's conditional use application to operate in the proposed location substantially burdened Plaintiff's members' ability to worship according to their beliefs; and (2) if so, was Defendant's decision in furtherance of a compelling governmental interest. Because the Court concludes as a matter of law that the answer to the first question is no, there is no need to reach the second.

#### A. *No reasonable trier of fact could find that a substantial burden is imposed on Plaintiff's members' religious beliefs in their current location*

The Eleventh Circuit, with emphasis added, has explained clearly that a substantial burden, as that term is used in RLUIPA, "must place more than an inconvenience on religious exercise; a 'substantial burden' is akin to significant pressure which *directly coerces* the religious adherent to conform his or her behavior accordingly. Thus, a substantial burden can result from pressure that tends to force adherents to forego religious precepts or from pressure that mandates religious conduct." *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir.2004). (In *Warner v. City of Boca Raton*, 887 So.2d 1023, 1033 (Fla. 2004), the Florida Supreme Court adopted this definition of substantial burden for purposes of RFRA.) Further, it may be appropriate upon a motion for summary judgment to determine as a matter of law whether a zoning decision has substantially burdened a religious assembly's religious beliefs where no genuine, material factual disputes exist. In *Midrash Sephardi*, for example, the Eleventh Circuit considered an Orthodox Jewish synagogue's appeal from the magistrate judge's entry of summary judgment in favor of the defendant municipality and the appellate court found, as a matter of law, that the record viewed in the synagogue's favor established that the synagogue's members' religious beliefs had not been substantially burdened by the city's actions. 366 F.3d at 1228–29. In this case, there is no factual dispute regarding the requirements imposed on Plaintiff's congregation by Jewish law and the ways in which Plaintiff's congregants are now required to enter, worship in and exit from the current location. Defendant and the Court now credit Rabbi Horowitz's testimony on these points. As in *Midrash Sephardi*, the undersigned concludes as a matter of law that Defendant's denial of Plaintiff's conditional use permit has not coerced Plaintiff's congregants into foregoing their religious beliefs.

Plaintiff's response to Defendant's motion for summary judgment identifies, but does not discuss at length, three "problems" that would be solved by approval of the conditional use application and relocation to the proposed location: (1) late-arriving women will no longer be forced to walk through the men's prayer area; (2) the kiddush will be prepared in a dining area separate from the prayer area; and (3) the congregants will no longer have to rotate their bodies in order to pray facing toward Jerusalem. These problems may or may not be solved in the proposed location but the Court need not decide that question in order to reject Plaintiff's substantial burden claim. There is no dispute that these problems either can be or already have been solved in the current location or that the distractions caused by these problems do not amount to substantial burdens.

Rabbi Horowitz has testified that late-arriving women now have the option of walking around the men's prayer area to arrive at their own. (And, the Court notes, tardy congregants will be equally disruptive in either location and Plaintiff cannot plausibly argue that the proposed location will cause all congregants to arrive on time for all religious services.) Next, Rabbi Horowitz has testified that the disruption caused by preparation of the kiddush is amplified by the decision of certain congregants to sit in the back of the prayer area; these individuals are now free to move forward before services begin, leaving the back of the prayer area empty for the preparation of the meal. Finally, the congregation is now able to adhere to its religious beliefs regarding the need to pray facing toward Jerusalem by rotating toward the cast during prayer services.

To the extent that these problems cannot be solved in the current location, Plaintiff does not claim that they violate Jewish law but rather, using Rabbi Horowitz's characterization, claims that these problems distract congregants from prayer or religious services. Plaintiff, however, has made no argument explaining how distractions are actionable under RLUIPA. The only legal authority submitted by Plaintiff is neither relevant nor persuasive. Plaintiff argues, briefly, that the decision of the Seventh Circuit Court of Appeals in *Sts. Constantine and Helen Greek Orthodox Church, Inc. v. City of New Berlin*, 396 F.3d 895, 2005 WL 221964 (7th Cir. Feb.1, 2005), supports its position. Plaintiff, however, ignores the fact that the Eleventh Circuit has rejected the Seventh Circuit's construction of the term substantial burden. *Midrash Sephardi*, 366 F.3d at 1227 ("[W]e decline to adopt the Seventh Circuit's definition [of the term.]"). Furthermore, the religious assembly applying for a conditional use permit in *Sts. Constantine and Helen* suffered a substantial burden by being forced to sell land in its possession or "be subjected to unreasonable delay by having to restart the permit process to satisfy the [municiaplity] about a contingency for which the Church has already provided complete satisfaction." 396 F.3d 895, 2005 WL 221964. Plaintiff in this case does not claim that Defendant's have comparably deprived the synagogue of the use of land in its possession. Instead, Plaintiff claims that it will have to continue to deal with certain distractions during prayer services unless allowed to relocate to land that it does not now own.

■ RLUIPA does not protect religious assemblies from being distracted while observing their religious beliefs; by its terms, the statute protects religious assemblies such as Plaintiff from *substantial burdens,* i.e. pressures that force assemblies to forego their religious beliefs. No reasonable trier of fact could conclude from the present record that Plaintiff's congregants are forced to forego the ten-

ets of Orthodox Judaism in the current location. Men and women now sit separately as required by Jewish law, the kiddush is prepared-distractions notwithstanding-in a manner consistent with Jewish law and Plaintiff's members are able to rotate toward Jerusalem while praying. Accordingly, summary judgment in favor of Defendant is appropriate.[6]

B. *No genuine issues of material fact exist*

Next, Plaintiff argues that a genuine issue of material fact prevents the entry of summary judgment in Defendant's favor. Specifically, Plaintiff argues that the same genuine issue of material fact that prevented the Court from granting Plaintiff's motion for partial summary judgment now prevents the Court from granting Defendant's motion. This argument, however, is meritless. Plaintiff's motion asked the Court to find as a matter of law, and prior to the completion of discovery in this cause, that the three problems identified above imposed a substantial burden on Plaintiff's congregation as that term is used in RLUIPA; in response, Defendant introduced the testimony of an expert on Jewish law to the effect that these problems did not violate the tenets of Orthodox Judaism. The Court found that a conflict between the two submissions rendered summary judgment in Plaintiff's favor inappropriate. Now, upon Defendant's motion for summary judgment, the city, with the benefit of having deposed Rabbi Horowitz, does not dispute Plaintiff's characterization of the requirements of Jewish Law or the facts surrounding Plaintiff's mem-

bers' worship in the current location. Instead, Defendant argues, and the Court agrees, that no reasonable trier of fact could find that the three problems identified by Plaintiff amount to substantial burdens under RLUIPA.

For these reasons, the Court concludes that no reasonable trier of fact could find that Defendant's zoning decision has imposed a substantial burden on Plaintiff's members' exercise of their religious beliefs in violation of RLUIPA. Because the same analysis applies to Plaintiff's claims under RFRA, the Court enters summary judgment in Defendant's favor on the substantial burden claims contained in Count I as well as Count II of Plaintiff's complaint. Because the Court finds that no substantial burden has been imposed, there is no need to reach the question of whether Defendant's decision was supported by a compelling governmental interest.

**II.** *Plaintiff's disparate treatment claim*

 Plaintiff claims that Defendant has "treated and continues to threat the Synagogue on less than equal terms with a nonreligious assembly or institution, to wit: the 'party room' in the 2600 Island Boulevard building." Defendant argues that Plaintiff is not being treated on unequal terms vis-a-vis the 2600 Building in violation of RLUIPA because the two entities are materially different under the zoning scheme adopted by Defendant. On this point, Plaintiff does not dispute that the party room located in the 2600 Building has been zoned as an accessory use to the

---

**6.** Plaintiff also argues without explanation that two unpublished opinions of the Sixth Circuit Court of Appeals support the conclusion that Defendant's zoning decision has imposed a substantial burden on Plaintiff's religious beliefs. *Dilaura v. Ann Arbor Charter Township,* 2002 WL 273774 (6th Cir. Feb.25,

2002); *DiLaura v. Township of Ann Arbor,* 2004 WL 2297869 (6th Cir. Oct.6, 2004). Plaintiff, however, has not explained the significance of these cases and the Court, after reviewing the holdings in each, concludes that they do not compel a result different than that reached here today.

residential building located at that address and may operate within an RMF4 zoning district without need for a conditional use permit, nor does Plaintiff dispute that churches are one of several types of organizations that must first apply for leave of the zoning board to operate in an RMF4 zoning district. Instead, Plaintiff argues, without citation to the case or further explanation, that,

> as the decision in *Midrash Sephardi* makes clear, the issue which this Court must address is *not* whether the "party room" qualifies as an "accessory use" under the City's land development regulations. Rather, the factual questions which this Court must answer are whether (a) the "party room" is a "nonreligious assembly or institution" within the meaning of 42 U.S.C. § 2000cc(b)(1), *supra*, and (b) if so, by virtue of the denial of the Synagogue's application for a conditional use permit, it received from the City better treatment than did the Synagogue.
>
> ... [T]he 'party room' operated by the [2600 Building] is the quintessential 'social club' (hence ... a 'nonreligious assembly or institution' within the meaning of 42 U.S.C. § 2000cc(b)(1)) because it is reserved for the exclusive use of the residents of the 2600 Building and their invited guests.

Comparing this case to *Midrash Sephardi* and considering the relevant, undisputed facts makes clear that, as a matter of law, Plaintiff has not been treated on unequal terms vis-a-vis the 2600 Building in violation of RLUIPA because the party room of the 2600 Building is an accessory to a residential use rather than a separate nonreligious assembly.

In *Midrash Sephardi*, the court of appeals considered a zoning ordinance that prohibited religious assemblies from being located within a business district where "private clubs" and secular assemblies were permitted to operate. The ordinance at issue in that case defined private clubs as organizations existing "for social, educational or recreational purposes, but not primarily for profit and not primarily to render a service which is customarily carried on as a business.'" 366 F.3d at 1233 (quoting Town of Surfside Zoning Ordinance § 90–2(20)). The defendant municipality explained that it affirmatively excluded churches, synagogues and other religious assemblies from these business districts because, in the city's judgment, they did not further the city's goal of increasing commerce within business districts. *Id.* Adopting the strict scrutiny test announced by the United States Supreme Court in *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 542, 545–46, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993), the court of appeals found that this ordinance by its terms was not neutral between private clubs and religious entities, was not of general applicability and was not narrowly tailored to the city's goals. *Id.* at 1232–35.

In this case, the pertinent portions of the municipal code do not distinguish between religious and nonreligious assemblies in the same manner as the regulation struck down in *Midrash Sephardi*, Rather, §§ 31–143(f)(2) and (2a) of the City of Aventura Municipal Code distinguish between *residential* uses, and accessories thereto, and "all uses permitted in [CF] District[s]." Section 31–147, which governs CF districts, in turn provides that "[c]hurches or synagogues and other houses of worship" are among those uses permitted as of right within CF districts while "[p]rivate fraternal, civic, charitable, professional or educational non-profit organizations," i.e. the private clubs treated more favorably in *Midrash Sephardi*, require conditional approval before operating within CF districts. In other words, while residential uses, such as the party room,

are allowed as of right in RMF4 districts, such as the one in which the proposed location, the 2600 Building and the party room are located, both religious assemblies such as Plaintiff and private clubs such as those in *Midrash Sephardi* are required to apply for a variance before being allowed to operate in these districts. Rephrasing these distinctions in terms of RLUIPA, Plaintiff is treated less favorably than residential uses and accessories thereto because the synagogue must apply for a conditional use permit before moving into an RMF4 district, but is treated on equal terms with the nonreligious institutions listed in § 31–147, which must also submit conditional use permit applications before operating in an RMF4 district.

Plaintiff has introduced no legal authority to support the proposition that RLUIPA compels municipal governments to treat religious institutions in the same manner as *residential* uses. Furthermore, Plaintiff has made no argument and introduced no evidence that would allow a reasonable trier of fact to conclude that Defendant's treatment of the 2600 Building and the synagogue was not neutral or was not conducted according to rules of general applicability. Rather, Plaintiffs asserts only that the party room is operated by the 2600 Building as a social club for its residents and their guests without explaining further how this residential use constitutes a nonreligious assembly or institution. The Court finds no basis in either the text of RLUIPA, the case law of other circuit courts of appeal or the Eleventh Circuit's analysis of RLUIPA for the conclusion that the term nonreligious assembly encompasses residential uses such as the 2600 Building; rather, this term's ordinary meaning encompasses organizations such as the private clubs and businesses

such as those at issue in *Midrash Sephardi*—organizations that must submit to the same conditional use permit application process as Plaintiff before operating in RMF4 districts.

Plaintiff does not dispute Joanne Carr's testimony that the party room is zoned as an accessory use to the 2600 Building.[7] As a residential use, it is not a nonreligious assembly or institution for purposes of comparison under RLUIPA and Plaintiff's disparate treatment claims therefore fails as a matter of law.

For the reasons discussed above, it is hereby

ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment is GRANTED.

---

7. It is the undisputed testimony of Carr to the effect that the party room is an accessory to a residential use that now allows the Court to find as a matter of law that the 2600 Building and its party room are not a nonreligious assembly under RLUIPA.