MANION, Circuit Judge,
concurring.
A.
This case is difficult not because of the facts, but because of the hypotheticals. I agree with the court that under the facts of this case, River of Life does not have a likelihood of success on the merits of its Equal Terms challenge. To be treated “on less than equal terms” a church must be “equal” to a non-religious assembly allowed under the zoning ordinance. At this point, River of Life Church is not equivalent to any of the allowable uses in Hazel Crest’s commercial district.[1]
The challenge before our court is crafting a standard for analyzing all of the hypothetical Equal Terms cases yet to come. The difficulty in this task is highlighted by the fact that the court agrees with the outcomes of the Third and Eleventh Circuit decisions in this area, but finds neither circuit’s approach entirely satisfactory (although the court also believes that, in application, the different standards might yield similar or even identical results). Opinion at 370. Judge Sykes in her dissent foresees other problems with this court’s standard. While I disagree with Judge Sykes’ conclusion that River of Life was treated “on less than equal terms” of other assemblies, her dissent persuasively identifies potential flaws with the court’s standard, given the statutory text and historical and legislative background to the Religious Land Use and Institutionalized Persons Act. Even the court acknowledges that the test is not “air tight” and that future zoning cases will be harder to classify. Opinion at 373-74. Given that the facts of this case do not lay a solid foundation for crafting a universally governing standard, it might be more prudent to resolve the straightforward case before us rather than speculating on how to resolve a more difficult question in a future case.
B.
More discomforting is the court’s observation that if religious beliefs excused an individual from compliance with otherwise valid regulations, “this might be deemed favoritism to religion and thus violate the establishment clause,” and the court’s further statement that “[a] subtler objection to the [Eleventh Circuit] test is that it may be too friendly to religious land uses, unduly limiting municipal regulation and maybe even violating the First Amendment’s prohibition against establishment of religion by discriminating in favor of religious land uses.” Opinion at 370. Only dicta supports this statement. Sts. Constantine & Helen Greek Orthodox Church, Inc. v. City of New Berlin, 396 F.3d 895, 900 (7th Cir.2005). In turn, Sts. Constantine cites dicta from Westchester Day Sch. *376 v. Village of Mamaroneck, 386 F.3d 183, 189-90 (2d Cir.2004). And Westchester Day’s dicta relies solely on Justice Stevens concurrence in City of Boerne v. Flores, 521 U.S. 507, 537, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997) (Stevens, J., concurring). Another Supreme Court concurrence, however, supports the view that the government may grant exemptions to religious observers without violating the Establishment Clause. Wallace v. Jaffree, 472 U.S. 38, 82, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985) (O’Connor, J., concurring) (“Even where the Free Exercise Clause does not compel the government to grant an exemption, the Court has suggested that the government in some circumstances may voluntarily choose to exempt religious observers without violating the Establishment Clause. See, e.g., Gillette v. United States, 401 U.S. 437, 453, 91 S.Ct. 828, 838, 28 L.Ed.2d 168 (1971); Braunfeld v. Brown, 366 U.S. 599, 81 S.Ct. 1144, 6 L.Ed.2d 563 (1961).”). Because there is no need to delve into this complicated question (and one which was not briefed) to resolve the case at hand, we should not imply that religious exemptions violate the Establishment Clause.
For these reasons, I concur.

. For a while, River of Life had a strong argument that it was treated on "less than equal terms" to non-religious assemblies because Hazel Crest’s zoning ordinance originally allowed meeting halls and community centers, which are likely comparable to a church under any standard of equivalency. But after this lawsuit was filed, Hazel Crest amended its ordinance and deleted those comparable uses. Deleting meeting halls and community centers from the commercial zone likely did not cause Hazel Crest much concern because it does not appear that there were any developers jumping at the chance to invest in such gathering places. In fact, at this stage Hazel Crest’s revitalization plan is still in the hypothetical stage; at the time of the original briefing in this case, Hazel Crest was eight years into its revitalization plan and yet no new businesses had located in the commercial district. The best thing for Hazel Crest might well have been for River of Life to take over the abandoned car wash, but the Village decided otherwise.