**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

INTERNATIONAL CHURCH OF THE
FOURSQUARE GOSPEL,
*Plaintiff-Appellant,*

v.

CITY OF SAN LEANDRO; TONY
SANTOS; SURLENE G. GRANT; DIANA
M. SOUZA; JOYCE R. STAROSCIACK;
BILL STEPHENS; JIM PROLA, in their
official capacities; JOHN JERMANIS;
DEBBIE POLLART, in their official
and individual capacities,
*Defendants-Appellees,*

v.

FAITH FELLOWSHIP FOURSQUARE
CHURCH,
*Real-Party-in-Interest-Appellant.*

No. 09-15163

D.C. No.
3:07-cv-03605-PJH

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Northern District of California
Phyllis J. Hamilton, District Judge, Presiding

Argued and Submitted
November 3, 2010—San Francisco, California

Filed February 15, 2011
Amended April 22, 2011

5289

Before: John T. Noonan and Richard A. Paez,
Circuit Judges, and Kevin Thomas Duffy, District Judge.*

Opinion by Judge Duffy

---

*The Honorable Kevin Thomas Duffy, United States District Judge for the Southern District of New York, sitting by designation.

**COUNSEL**

Kevin T. Snider and Matthew B. McReynolds, Pacific Justice Institute, Sacramento, California, for plaintiff-appellant Inter-

national Church of the Foursquare Gospel and real party in interest-appellant Faith Fellowship Foursquare Church.

Jayne W. Williams, Deborah J. Fox, and Philip A. Seymour, Meyers, Nave, Riback, Silver & Wilson, Los Angeles, California, for defendant-appellee City of San Leandro.

Daniel P. Dalton, Royal Oak, Michigan, Amicus Counsel for the Church State Council and Cavalry Chapel in Support of plaintiff-appellant International Church of the Foursquare Gospel.

Jennifer McGrath and Scott F. Field, Huntington Beach, California, Amicus Counsel for the League of California Cities in Support of defendant-appellee City of San Leandro.

---

## ORDER

The Opinion, filed on February 15, 2011, and reported at 634 F.3d 1037 (9th Cir. 2011), is amended as follows:

At Slip Op. 2447, 634 F.3d at 1043, the sentence: <There is no dispute that the City's treatment of the Church's applications constitutes an "individualized assessment."> is deleted and replaced with the sentence: <The City's treatment of the Church's applications constitutes an "individualized assessment." *Guru Nanak Sikh Society of Yuba City v. County of Sutter*, 456 F.3d 978, 987 (9th Cir. 2006).>

In the following sentence at Slip Op. 2447, 634 F.3d at 1043, the words <Nor is there dispute that> are deleted and replaced with <Further,>.

At Slip Op. 2247, 634 F.3d at 1044, the full cite to <*Guru Nanak Sikh Society of Yuba City v. County of Sutter*, 456 F.3d 978, 985-86 (9th Cir. 2006).> is deleted and replaced with the short cite: <*Guru Nanak*, 456 F.3d at 985-86.>.

At Slip Op. 2247, 634 F.3d at 1044, the word <determined> is deleted and replaced with <determine>.

An Amended Opinion is filed concurrently with this Order.

With these amendments, the panel has voted to DENY the petition for panel rehearing. The full court has been advised of the petition for rehearing en banc and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35. The petition for rehearing en banc is DENIED.

No further Petitions for Rehearing shall be filed.

---

## OPINION

DUFFY, District Judge:

International Church of the Foursquare Gospel ("ICFG") appeals the grant of summary judgment in favor of the City of San Leandro (the "City"). ICFG alleges violations of the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc ("RLUIPA"), and asserts claims under 42 U.S.C. § 1983 for First and Fourteenth Amendment violations. ICFG contends that the City violated its rights by denying a rezoning application and a conditional use permit ("CUP") to its local affiliate, Faith Fellowship Foursquare Church ("the Church"), to build new church facilities on certain industrial land in the City, and that such a denial violated the "substantial burden" and "equal terms" provisions under RLUIPA.

We find that there is a triable issue of material fact regarding whether the City imposed a substantial burden on the Church's religious exercise under RLUIPA. We also decide that the City failed as a matter of law to prove a compelling interest for its actions. Accordingly, we reverse the judgment

of the district court and remand for further proceedings consistent with this opinion.[1]

## I. *Background*[2]

The Church is a congregation affiliated with ICFG and located in San Leandro. Over the last fifteen years, the Church's membership has increased dramatically, and since 2005, the Church's present location has been too small to support its large congregation and its many activities.

In January 2006, the Church began to look for a larger property. In February 2006, the Church found a site located on two parcels at 14600 and 14850 Catalina Street in San Leandro ("the Catalina property"). The Catalina property is located in San Leandro's Industrial Park ("IP") zoning district and is situated in the "West San Leandro Focus Area." The area was set aside in the City's General Plan[3] to preserve an environment for industrial and technological activity. The property is adjacent to several manufacturing plants and is surrounded by numerous other industrial and light-industrial uses.

---

[1]Because we hold that the district court improperly granted summary judgment as to whether the City's actions created a substantial burden, we have no need to address whether the City violated the Equal Terms provision of RLUIPA or the Church's First and Fourteenth Amendment rights. In the event that Appellants do not prevail on remand, they may raise these remaining challenges in any subsequent appeal.

[2]This summary draws extensively from the district court opinion, *Int'l Church of the Foursquare Gospel v. City of San Leandro*, 632 F. Supp. 2d 925 (N. D. Cal. 2008).

[3]Under California law, a General Plan is "a statement of development policies and shall include a diagram . . . and text setting forth objectives, principles, standards, and plan proposals." It must also include designated elements. Cal. Gov't Code § 65302. In California, zoning laws must conform to the General Plan. *Neighborhood Action Group v. Cty. of Calaveras*, 156 Cal. App. 3d 1176, 1183, 203 Cal. Rptr. 401 (1984).

ICFG asserts that moving the Church to the Catalina property would allow the congregation to more fully follow their sincerely held beliefs. In particular, the Catalina property could accommodate 1,100 people in the sanctuary and an additional 500 people in other activities (such as Sunday school) during each service. The Catalina property would also offer substantial parking space and a much larger kitchen facility. On March 24, 2006, the Church signed a purchase and sale agreement for the property.

At the time that the Church identified the Catalina property as a potential site for the Church, the San Leandro Zoning Code ("the Zoning Code") did not allow "assembly uses" — churches and private or non-profit clubs, lodges, and organizations — to locate in the IP district or other industrial or commercial districts of the City, but did allow them to locate in districts zoned Residential ("R"), provided the assembly use obtained a conditional use permit.

In May 2006, representatives of the Church met with City Planning staff to discuss the acquisition of the Catalina property. According to Debbie Pollart, the City's then Planning Director, staff advised the Church that religious assembly uses were conditionally permitted uses in the City's R zoning district only, and that the Zoning Code did not permit assembly uses within the IP district. However, "entertainment activities" and "commercial recreation" were conditionally permitted within the IP district. The Planning staff further advised the Church that in order for it to relocate to the Catalina property, two changes to the Zoning Code would be needed: (1) an amendment of the Zoning Code to make assembly a conditionally permitted use in the Industrial Limited ("IL") zoning district; and (2) an amendment of the zoning map to designate the Catalina property as IL. Following these instructions, the Church filed an application for a zoning map amendment, asking for the Catalina property to be rezoned from IP to IL and asking for assembly use to be permitted on IL properties in the City.

Although the Planning staff advised the Church to apply for an amendment to the Zoning Code to make assembly a conditionally permitted use in IL districts, the Planning staff soon realized that such an amendment would have city-wide ramifications. The Planning staff discussed these policy concerns after the Church applied for rezoning of the Catalina property. Pollart was particularly concerned about the potential for conflict between industrial and assembly uses. She felt there was a need to protect assembly uses from unacceptable impacts such as noise, dust, or constant truck traffic. Pollart similarly wanted to protect industrial uses from complaints by assembly uses. Pollart was equally concerned that industrial and commercial uses could be displaced by assembly uses, which could hurt the City's industrial and economic base.

On June 8, 2006, the City Council's Business Development Subcommittee (comprised of the Mayor of San Leandro plus two members of the San Leandro City Council) met and discussed the Church's application to use the Catalina property. They expressed concerns over the policy implications of allowing an assembly use in an industrial zone.

Planning staff therefore advised the Church by letter that the Church's request would require careful analysis by Staff and would be considered at public hearings by numerous civic advisory bodies, the Planning Commission, the Board of Zoning Adjustments, and, ultimately, the City Council to ensure that any such change was consistent with the City's General Plan. The letter further advised that the Planning Staff anticipated that these hearings would take place in the Fall of 2006.

In October 2006, Church representatives addressed the City Council during the "public comment" portion of the Council meeting, informing the Council about the proposed purchase of the Catalina property and the delays that the City had allegedly caused in the review process. At this point, the Planning staff had developed two legislative options by which the City could expand the accommodation of assembly uses in non-

residential districts. Option 1 would make assembly use a conditionally permitted use in all areas zoned IL, which would increase the area in which assemblies were allowed by about 94 acres. Option 2 would create a new "Assembly Use Overlay District," which, when applied to any non-residential property, would make assemblies an allowable use in addition to those allowed under the pre-existing zoning. Option 2 would also apply the Assembly Use ("AU") Overlay designation to certain non-residential properties identified by Planning Staff as suitable for assembly use, according to criteria staff had developed from the City's General Plan. Option 2 would increase the area in which assemblies are allowed by over 200 acres.

On October 12, 2006, the City Council's Business Development Subcommittee met and discussed the Church's application. Church representatives attended the meeting, and the two options were presented. After the presentation, the members of the Subcommittee expressed a strong preference for the second alternative—the overlay zoning approach—because it appeared to provide greater opportunities for expansion of religious and other assembly uses in the City.

On October 19, 2006, the Board of Zoning Adjustments and the Planning Commission held a joint session during which they discussed the Church's application. Pollart explained that the two options were designed to lay the groundwork for accommodating religious and secular assembly uses in non-residential areas, though neither option would immediately affect the Catalina property. If Option 1 were approved, the Church would need to obtain rezoning of the property to IL, an amendment for which the Church had applied five months earlier. If Option 2 were approved, the Church would need to obtain rezoning of the property to "AU Overlay."

The Church's senior pastor, Gary Mortara, urged the City to act quickly, as the Catalina property had been in escrow

since February and the Church was obliged to complete its purchase by October 31, 2006. In response, Pollart explained that under either option, the Church's use of the Catalina property could not feasibly be made allowable by October 31. At the close of the meeting, the City decision makers expressed a preference for Option 2. After the October 19, 2006 joint work session, the Planning Staff continued to refine the criteria for selection of properties for inclusion in the AU Overlay zone and began drafting proposed text for the actual Zoning Code amendments that would create the AU Overlay zoning classification and regulations.

On October 23, 2006, the Church signed an amendment to the purchase and sale agreement and paid an additional $50,000 nonrefundable fee to extend the agreement to December 31, 2006.

On December 7, 2006, the Board of Zoning Adjustments reviewed the proposal for the AU Overlay zone. Planning Staff recommended that the Board review the proposed amendments and make comments that would be forwarded to the Planning Commission.

On December 29, 2006, the Church closed escrow on the Catalina property with a final down payment of $53,903.39. According to ICFG, the Church could not obtain any further extensions. ICFG claims that Church believed there was a "strong likelihood" that the application would be approved by the City based on statements by City officials that other amendments for assembly uses by commercial, recreation, and entertainment businesses had been previously approved, and also based on supportive statements by City officials at public meetings. On January 2, 2007, the deed of trust was recorded in Alameda County Recorder's Office in the names of ICFG and the Church.

On February 22, 2007, the Planning Commission conducted a public hearing on the proposed AU Overlay zoning

amendments. Planning Staff presented the Planning Commission with the proposed amendments that would replace all references to "religious assembly" and "clubs and lodges" with a religiously neutral category of "assembly use," and would also create the new AU Overlay District. Staff further indicated that they had identified nearly 200 properties as suitable for AU Overlay designation using eight criteria that they developed after consulting applicable General Plan policies.[4] At the close of the public hearing, the Planning Commission unanimously recommended that the City Council approve the proposed amendments.

On March 19, 2007, the City Council approved the AU Overlay District and Map amendments, effective on May 1, 2007, passing an ordinance that consolidated and equalized treatment of secular and religious assembly uses, and establishing a new AU Overlay District. The City Council applied the new AU Overlay designation to the 196 properties (over 200 acres total) that Staff had identified as suitable. Based on the selection criteria that had been utilized to select properties for inclusion in the AU Overlay District, the City Council determined that the Catalina property should not be included in the new zone.

---

[4]The eight criteria are as follows: (1) the site is not located along a major commercial corridor; (1) the site is not located along a major commercial corridor; (2) the site is not located within certain General Plan Focus Areas (Downtown, Bayfair, Marina Blvd./SOMAR, or West San Leandro); (3) the site is not located in regional-serving retail area (Greenhouse Marketplace, Westgate, Marina Square, or "old" Target site); (4) the site is not located inside the one-half mile study area identified for Downtown Transit-Oriented Development Strategy; (5) the site abuts or is within one-quarter mile of an arterial street; (6) the site is not located in a Residential zone; (7) the site is not considered public land, and is not zoned Public Service, Open Space, or Commercial Recreation; is not owned by an Exempt Public Agency or leased/owned by a public utility; and (8) the overlay area must allow a contiguous area greater than or equal to two acres.

On March 20, 2007, representatives of the Church filed an application to amend the zoning of the Catalina property from "IP" to "IP (AU) with Assembly Use Overlay." On April 12, 2007, the Planning Commission conducted a public hearing on the rezoning application. After considering the eight criteria listed above, the Planning Staff recommended that the Planning Commission deny the Church's application for the zoning amendment. The report stated that the Catalina property did not meet two of the criteria because the property is located within one of the General Plan Focus Areas—the West San Leandro Business District (in violation of criteria 2); and the property does not abut or is not located within 1/4 mile of an arterial street (in violation of criteria 5).

The report added that the site failed to meet additional criteria of public health and safety, because the presence and potential future presence of hazardous materials and activities in the vicinity of the Church's proposed assembly use rendered it inappropriate for rezoning within the AU Overlay District. This last conclusion was based on the fact that there were eight businesses operating under a Hazardous Materials Business Plan ("HMBP") within 500 feet of the Catalina property and an additional thirteen businesses operating under a HMBP within 500 feet and one-quarter mile of the site. However, of the 196 properties included in the AU Overlay District, all of them are located within 1/4 mile of a business which has a HMBP. Following the close of the public hearing, the Planning Commission voted to deny the Church's application.

The Church appealed this decision to the City Council on April 16, 2007. On May 7, 2007, the City Council met to consider the appeal and denied it in a unanimous vote. The primary ground for denying the rezoning application was that it did not meet two of the eight criteria as noted above.

Meanwhile, on March 28, 2007, the Church had submitted an application for a conditional use permit for a proposed

assembly use at the Catalina property, under the existing zoning. Pollart reviewed the application and determined that it could not be processed because it was incomplete. On April 25, 2007, she notified the Church that the application was missing information relating to proposed use and construction at the site. Pollart stated that the Church did not respond to the letter or submit the required information. Thus, she took no further action regarding the application. She stated that she understood that a complete application was eventually submitted to the City and processed at the Church's request, even though the rezoning to allow assembly uses on the Catalina property without a conditional use permit had been denied. The conditional use permit application was eventually denied by the Planning Commission, and the City Council on appeal, because of inconsistency with the zoning and additional factors such as inadequate parking space. This litigation ensued.

## II.   *The District Court's Ruling*

The district court granted summary judgment for the City. The district court first concluded that the City's denial of the Church's rezoning and CUP applications did not violate the substantial burden provision of RLUIPA. The court reasoned that a zoning law, as a neutral law of general applicability, can impose only an incidental burden, and does not trigger RLUIPA's strict scrutiny standard. *Int'l Church of the Foursquare Gospel v. City of San Leandro*, 632 F. Supp. 2d 925, 937 (N.D. Cal. 2008).

Consequently, the district court concluded that the City's stated interest, to reserve the Catalina property located in the West San Leandro Business District for industrial use, was legitimate, and granted summary judgment on this claim in favor of the City. *Id.* at 941-42. The district court also rejected the Church's contention that the City's conduct violated the Equal Terms provision of RLUIPA, as well as its First and Fourteenth Amendment claims. *Id.* at 947-55.

*III.   Analysis*

*A.   Standard of Review*

We review a grant of summary judgment de novo. *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024, 1029 (9th Cir. 2004). This court "must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Id.* at 1029-30 (internal quotations and citation omitted).

*B.   The Religious Land Use and Institutionalized Persons
      Act (RLUIPA)*

**[1]** RLUIPA provides that a government land-use regulation "that imposes a substantial burden on the religious exercise of a . . . religious assembly or institution" is unlawful "unless the government demonstrates that imposition of the burden . . . is in furtherance of a compelling governmental interest; and is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc(a)(1). Thus, RLUIPA analysis proceeds in two sequential steps. First, the plaintiff must demonstrate that a government action has imposed a substantial burden on the plaintiff's religious exercise. Second, once the plaintiff has shown a substantial burden, the government must show that its action was "the least restrictive means" of "further[ing] a compelling governmental interest." *Id.*

As a preliminary matter, RLUIPA applies if ". . . [the] burden is imposed in the implementation of a land use regulation or system of land use regulations, under which a government makes . . . individualized assessments of the proposed uses for the property involved." 42 U.S.C. § 2000cc(a)(2)(C). The City's treatment of the Church's applications constitutes an "individualized assessment." *Guru Nanak Sikh Society of*

*Yuba City v. County of Sutter*, 456 F.3d 978, 987 (9th Cir. 2006). Further, the City's Zoning Code undeniably is a "system of land use regulations" within the meaning of RLUIPA because it is a system of "zoning [laws] . . . that limits or restricts a claimant's use or development of land . . . ." 42 U.S.C. § 2000cc-5(5).

1. *The district court erred in holding that, as a matter of law, the City's actions did not impose a substantial burden on the Church's exercise of religion within the meaning of RLUIPA.*

**[2]** Congress passed RLUIPA to reinstate the strict scrutiny standard that had been applied—prior to *Smith*— to certain laws, including generally applicable, facially neutral zoning laws pursuant to which governments may make "individualized assessments" of the property at issue. *See Guru Nanak,* 456 F.3d 978, 985-86; 42 U.S.C. § 2000cc(a)(2)(C).

**[3]** In this case, while the zoning scheme itself may be facially neutral and generally applicable, the individualized assessment that the City made to determine that the Church's rezoning and CUP request should be denied is not. We have never held that a zoning regulation cannot impose a substantial burden under RLUIPA simply by the fact that it is a zoning regulation. *See id.* at 985-92 (specifically rejecting the county's contention that its denial of the CUP at issue in that case falls outside the scope of RLUIPA because "its use permit process is a neutral law of general applicability," *id.* at 986); *San Jose Christian College*, 360 F.3d at 1033-36. Rather, our practice is to examine the particular burden imposed by the implementation of the relevant zoning code on the claimant's religious exercise and determine, on the facts of each case, whether that burden is "substantial." *Guru Nanak*, 456 F.3d at 987.

**[4]** The district court, by concluding that the Zoning Code as a neutral law of general applicability could impose only an

incidental burden on religious exercise, committed reversible legal error. This conclusion misinterprets our precedent and effectively writes RLUIPA's substantial burden provision out of RLUIPA.

**[5]** Therefore, we must first address whether the City's denial of the Church's rezoning application substantially burdened the Church's religious exercise within the meaning of RLUIPA. The "substantial burden" provision of RLUIPA, § 2000cc(a)(1), provides:

> No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution—
>
> (A) is in furtherance of a compelling interest; and
>
> (B) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc(a)(1). ICFG bears the burden to prove that the City's land use regulation or denial of conditional use permit imposed a substantial burden on its religious exercise. *See* § 2000cc-2(b); *Guru Nanak Sikh Soc'y of Yuba City v. Cnty. of Sutter*, 456 F.3d 978, 988 (9th Cir. 2006). Generally, the term "substantial burden" in RLUIPA is construed in light of federal Supreme Court and appellate jurisprudence involving the Free Exercise Clause of the First Amendment prior to the Court's decision in *Emp't Div. Dep't of Human Res. of Oregon v. Smith*, 494 U.S. 872, 878-82 (1990). *Guru Nanak*, 456 F.3d at 985-86, 988.

**[6]** Accordingly, we have held that a substantial burden "must place more than inconvenience on religious exercise." *Id.* at 988 (internal quotations and citation omitted). "[F]or a

land use regulation to impose a 'substantial burden,' it must be 'oppressive' to a 'significantly great' extent. That is, a 'substantial burden' on 'religious exercise' must impose a significantly great restriction or onus upon such exercise." *San Jose Christian College*, 360 F.3d at 1034 (citation omitted); *see also Guru Nanak*, 456 F.3d at 988-89. A substantial burden exists where the governmental authority puts " 'substantial pressure on an adherent to modify his behavior and to violate his beliefs.' " *Guru Nanak*, 456 F.3d at 988 (quoting *Thomas v. Review Bd. of the Ind. Emp't Sec. Div.*, 450 U.S. 707, 717-18 (1981)). If ICFG establishes a substantial burden, the burden of proof shifts and the City must then show that the restrictions are narrowly tailored to accomplish a compelling government interest. *See* 42 U.S.C. §§ 2000cc(a)(1), 2000cc-2(b); *Guru Nanak*, 456 F.3d at 992.

Here, the Church offered evidence from its realtor and a former City Manager that no other suitable sites exist in the City to house the Church's expanded operations. However, the district court found that this evidence was not sufficient to create a triable issue of fact on the burden placed on the Church. The district court instead held that the Church did not adequately demonstrate that its realtor was qualified to determine whether suitable sites exist in the City. The district court simply rejected the realtor's evaluation, which was based on the Church's stated requirements, rather than on a detailed and objective analysis of all the plots in the AU Overlay District. The district court also noted that it found the realtor's comments vague. *Int'l Church*, 632 F. Supp. 2d at 942-43. Further, the district court concluded that the former City Manager's testimony that there were no other buildings in the City to which the Church could acceptably relocate meant only that there were no other buildings ready for occupancy that met the Church's requirements, not that there were no other sites that were objectively reasonable alternatives for the Church in the City.

**[7]** As a rule, in order to raise a fact issue for trial, the non-moving party must present more than a "mere . . . scintilla of

evidence" to defeat a motion for summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986). Here, the district court erred by dismissing the Church's realtor's assertions out of hand. The Church's realtor presented significant evidence that no other suitable properties existed: he examined each of the 196 parcels rezoned for assembly use, and found them unsuitable for the needs of a large religious congregation. Of the several properties suggested by the City, only a lumber yard was even listed for sale and it was under contract. Other properties—including a Kraft factory, a shopping center, and a mobile home park—were deemed unsuitable because of size, configuration, safety issues, and current uses. We are persuaded by *Westchester Day School*, in which the Second Circuit accepted the religious school's experts' testimony as conclusive evidence that the specified property was the only site that would accommodate its new building. 504 F.3d at 352. In this case, even if the Church's realtor's deposition testimony is not of the quality required to support granting summary judgment in favor of the Church, it is certainly more than the scintilla of evidence required to defeat summary judgment. The City Manager's testimony, along with the practical considerations of locating sufficient neighboring residential properties to accommodate a facility much larger than the average neighborhood church, constitutes some evidence that suitable residential property in the City was not available for the Church.

The district court also held that the denial of the Church's application to include the Catalina property in the AU zoning district and the denial of its CUP application to use the Catalina property did not impose a substantial burden, as a matter of law, even if no other property is available for the Church to expand in the way it has requested. In support of this conclusion, the district court cited to cases that held that the denial of zoning permits to religious entities did not constitute substantial burdens when other viable sites in the relevant jurisdiction ultimately existed, *see San Jose Christian College*, 360 F.3d at 1035; *Civil Liberties for Urban Believers v.*

*City of Chicago*, 342 F.3d 752, 761-62 (7th Cir. 2003); *Petra Presbyterian Church v. Vill. of Northbrook*, 489 F.3d 846, 850-51 (7th Cir. 2007). However, the cited cases do not support the district court's determination. In fact, our sister circuit has held "that a burden need not be found insuperable to be held substantial." *Westchester Day Sch. v. Vill. of Mamaroneck*, 504 F.3d 338, 349 (2d Cir. 2007) (citation omitted). And when the religious institution "has no ready alternatives, or where the alternatives require substantial 'delay, uncertainty, and expense,' a complete denial of the [religious institution's] application might be indicative of a substantial burden." *Id.* (citation omitted).

The City, citing *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752 (7th Cir. 2003), argues that just because suitable properties are not available for sale on the market does not mean that the denial of the Church's desired site imposes a substantial burden because RLUIPA does not insulate religious institutions from "the harsh realit[ies] of the marketplace [that] sometimes dictate that certain facilities are not available to those who desire them." *Civil Liberties for Urban Believers*, 342 F.3d at 761. We are not persuaded by this case for several reasons. For one thing, *Civil Liberties for Urban Believers* was decided in a circuit that requires a government action to render "religious exercise . . . effectively impracticable" in order to qualify as a substantial burden under RLUIPA. *Id.* at 761. This higher standard has been rejected in this circuit. *See Guru Nanak*, 456 F.3d at 989 n.12. Also, in a later decision, the Seventh Circuit found that the denial of a church's rezoning application was a substantial burden even though the church:

> could have searched around for other parcels of land (though a lot more effort would have been involved in such a search than, as the City would have it, calling up some real estate agents), or it could have continued filing applications with the City, but in either

case there would have been delay, uncertainty, and expense.

*Sts. Constantine and Helen Greek Orthodox Church, Inc. v. City of New Berlin*, 396 F.3d 895, 901 (7th Cir. 2005). The Seventh Circuit further stated "[t]hat the burden would not be insuperable would not make it insubstantial." *Id.*

The Church responds that the marketplace in the City welcomed them, as evidenced by the fact that they were able to contract to purchase the Catalina property and that common sense dictates whether alternate sites are suited and for sale in the City must be considered in determining whether the City's denial of the necessary permits for the desired property constitutes a substantial burden. This argument resonates with the reality the Church would face in attempting to find alternate sites in the City and, in effect, whether the denial of its requested zoning relief would actually result in a substantial burden to its religious exercise within the meaning of RLUIPA.

[8] Further, the district court's dismissal of the Church's assertion that there was no other property suitable to accommodate its religious use in the City is based, at least in part, on its improper scrutiny of the Church's core religious beliefs. The district court rejected the Church's assertion that its "unique core beliefs" require it to be able to meet in one place to engage in "joyous corporate worship." The Church alleges that one of its core beliefs is that "Sunday morning services are the local expression of . . . the congregation . . . com[ing] together to form one body with Jesus Christ as its head." The Church's beliefs also require it to hold Sunday school and other ministries that take place at the same time as the traditional Sunday service. In spite of the Church's allegations about its core beliefs, the district court accepted the City's contention that the Church could continue to conduct three separate Sunday services or could acquire several smaller properties throughout the City and relocate some of its opera-

tions off site. The district court's flat rejection of the Church's characterization of its core beliefs runs counter to the Supreme Court's admonition that while a court can arbiter the sincerity of an individual's religious beliefs, courts should not inquire into the truth or falsity of stated religious beliefs. *United States v. Ballard*, 322 U.S. 78, 86-87 (1944).

[9] District courts in this circuit have recognized that for a religious institution, having

> a place of worship . . . is at the very core of the free exercise of religion . . . [and that] [c]hurches and synagogues cannot function without a physical space adequate to their needs and consistent with their theological requirements. The right to build, buy, or rent such a space is an indispensable adjunct of the core First Amendment right to assemble for religious purposes.

*Vietnamese Buddhism Study Temple in Am. v. City of Garden Grove*, 460 F. Supp. 2d 1165, 1171 (C.D. Cal 2006) (quoting 146 Cong. Rec. S7774-01, Exhibit 1 (daily ed. July 27, 2000) (joint statement of Senator Hatch and Senator Kennedy on RLUIPA of 2000)). Similarly, the district court in *Cottonwood Christian Center*, held that the denial of a CUP likely imposed a substantial burden on the church's religious beliefs in communal worship and evangelism when the church was prohibited from building "a large and multi-faceted church" sufficient to permit its 4,000 person congregation to meet in one service and to accommodate its other ministries and community service programs. These cases persuade us that the district court in this case erred in determining that the denial of space adequate to house all of the Church's operations was not a substantial burden.

In addition, the Church raises the issue that one of the criteria noted in denying its application to include the Catalina property in the AU Overlay District, that it is within 1/4 mile

of other sites with hazardous materials business plans, would render all of the 196 properties zoned AU Overlay unavailable because they all are within 1/4 mile of one or more sites with a hazardous materials business plan. The district court minimized this argument, stating that the main reason the City denied the Catalina property AU Overlay status was because it failed to meet two of the eight stated criteria set out by the City. *Int'l Church*, 632 F. Supp. 2d at 946-47. However, the evidence suggests that the presence of hazardous materials business plan sites was more than a passing consideration for the City. Further, the possibility of future reliance on this discretionary consideration could have implications for any future application the Church might file for a CUP in the AU Overlay District. *See Guru Nanak*, 456 F.3d at 989 (finding a substantial burden when the county's actions "to a significantly great extent lessened the possibility that future CUP applications would be successful.").

**[10]** Accordingly, we reverse the district court's grant of summary judgment. We hold that the Church has raised more than a "mere . . . scintilla of evidence" that the City imposed a substantial burden on its religious exercise. Accordingly, we remand this case to the district court for further proceedings consistent with this opinion.

2.  *The district court erred in holding that the City's claimed need to preserve properties for industrial use qualified as a compelling governmental interest as a matter of law.*

Although the district court found that the City's actions did not substantially burden the Church's religious exercise, the district court also held that the City had "established that it had a compelling government interest in preserving certain land for industrial use, because such preservation is required by the City's General Plan," and that the City's actions were the "least restrictive means of furthering that interest." *Int'l Church*, 632 F. Supp. 2d at 943. This conclusion was also in error.

**[11]** Under RLUIPA, if the Church demonstrates a substantial burden, the City bears the burden of establishing that its action "(A) is in furtherance of a compelling governmental interest; and (B) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc(a)(1); *see* 42 U.S.C. § 2000cc-2(b). The City submits that it has a "compelling interest in preserving the Catalina property for industrial use" because it "is located in the West San Leandro Business District focus area that is specifically targeted in the City's General Plan for preservation of industrial and certain commercial development needed to maintain the City's job base and economic welfare." The City contends that the "record amply shows that the Catalina property is uniquely suited for this purpose by reason of its location, design and current accommodations." The City also notes that the Catalina property historically provided employment for 400 persons.

**[12]** In *Grace Church*, 555 F. Supp. 2d 1126 (S.D. Cal. 2008), the district court concluded that "preservation of industrial lands for industrial uses does not by itself constitute a 'compelling interest' for purposes of RLUIPA. 42 U.S.C. § 2000cc(a)(1)." *Grace Church*, 555 F. Supp. 2d at 1140. This is because "[c]ompelling state interests are 'interests of the highest order.' " *Id.* (citing *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993)). Similarly, the district court in *Cottonwood Christian Center* held that revenue generation is not a compelling state interest sufficient to justify denying a religious institution a CUP when such denial imposes a substantial burden. *Cottonwood Christian Ctr.*, 218 F. Supp. 2d at 1228. The court there reasoned that if "revenue generation were a compelling state interest, municipalities could exclude all religious institutions from their cities." *Id.* This is so because religious and educational institutions are tax exempt and the land would always generate more revenue if put to a commercial or industrial use. *See id.* Further, the court there went on to support its conclusion with evidence that the subject property, which the city

decided that it wanted to use for a Costco, had not been put to a revenue-generating use in twelve years and that the city had not suffered. *Id.* at 1228-29. Analogously, here, the Catalina property was on the market because it had been unable to sustain the use preferred by the City as a technology company. It had been on the market for seven months when the Church entered into its contract with the then-property owners to buy the property for religious purposes.

Even if we assume without deciding that the City's interest is compelling, we believe there is a genuine issue of material fact as to whether the City used the least restrictive means to achieve its interest. While the City may prefer to preserve the Catalina property for industrial use, the City presents no evidence that it could not achieve the same goals by using other property within its jurisdiction for that purpose.

IV.   *Conclusion*

For the foregoing reasons, we REVERSE the district court's order granting summary judgment for the City and REMAND the matter for further proceedings.

**REVERSED.**