Filed 9/13/22; Certified for Publication 10/5/22 (order attached)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

COUNTY OF SAN BERNARDINO,

    Plaintiff and Respondent,

v.

APRIL ELIZABETH MANCINI, et al.

    Defendants and Appellants.

E075246

(Super. Ct. No. CIVDS1825140)

OPINION

APPEAL from the Superior Court of San Bernardino County. David S. Cohn, Judge. Affirmed.

Wynder Law and Charlene J. Wynder; Matthew Pappas for Defendants and Appellants.

Michelle D. Blakemore, County Counsel, Kristina M. Robb, Assistant County Counsel and Daniel Pasek, Deputy County Counsel, for Plaintiff and Respondent.

1

## I.

## INTRODUCTION

April Elizabeth Mancini owns the Jah Healing Kemetic Temple of the Divine Church, Inc. (the Church), whose adherents consume cannabis blessed by Church pastors as "sacrament." The County of San Bernardino (the County) determined that the Church, routinely sold cannabis products in violation of a County ordinance prohibiting commercial cannabis activity on unincorporated County land. The trial court found that the Church was operating an illegal cannabis dispensary and issued a permanent injunction against Mancini and the Church, among other relief. Mancini and the Church appeal, and we affirm.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

In December 2017, San Bernardino County Code Enforcement Officer David Jorgensen inspected the Church, which was then located at 1020 W. Big Bear Boulevard. While inside, Officer Jorgensen smelled the odor of marijuana and observed that the Church had a sales room. Mancini's parents told Officer Jorgensen that the Church dispensed blessed cannabis to its members as sacrament. Officer Jorgensen explained that dispensing cannabis was illegal under a County ordinance (San Bernardino County Code § 84.34.30),[1] so he issued a Notice of Violation (NOV).

---

[1] San Bernardino County Code section 84.34.030, titled "Prohibition of Commercial Cannabis Activity," provides in full: "Except as expressly provided by §§ 84.34.040 and 83.34.050, commercial cannabis activity shall not be considered a

*[footnote continued on next page]*

2

During a follow-up investigation of the Church in February 2018, Officer Jorgensen found that the premises were the same. Mancini denied that the Church was a dispensary and stated that they supplied cannabis only to the Church's members as sacrament. Officer Jorgensen told Mancini that the County viewed the Church to be operating as an illegal dispensary, gave her a copy of the NOV, and issued a citation.

Shortly afterward, the Church moved to its current location at 208 E. Big Bear Boulevard. In April 2018, County authorities executed a search warrant of the premises. Officer Jorgensen observed many signs that the Church was operating a dispensary, including cabinets filled with cannabis in jars, cannabis-infused drinks and edibles, vape cartridges, teas, creams, oils, cash registers, scales, packaging materials, bags, medicine bottles, pricing information, and an ATM machine. Officer Jorgensen issued the Church another NOV.

Officer Jorgensen conducted another inspection of the premises in August 2018. He observed a menu of cannabis products and a "cash only" sign. When Officer Jorgensen asked Mancini whether the Church continued to dispense cannabis, she responded that "church members come in, they tithe, choose their sacrament, pray, and

---

permitted or conditionally permitted use in any land use zoning district. Commercial cannabis activity, including delivery, is prohibited in all land use zoning districts, as those may be amended from time to time, and no permit of any type shall be issued therefor. It shall be unlawful for any person to conduct, cause to be conducted, or permit to be conducted, a commercial cannabis activity within the unincorporated area of the County. This Section shall not affect the right to possess or use cannabis as authorized by Federal or State law."

then they leave." She also explained that the Church had recently remodeled the "'sanctuary area,'" where the Church holds services and prayer sessions.

In September 2018, the County filed suit against Mancini and the Church (collectively, appellants), alleging that they were operating a dispensary in violation of San Bernardino County Code § 84.34.30. The County alleged the Church was a public nuisance and sought a permanent injunction, civil penalties, and attorney's fees.

Officer Jorgensen later obtained an inspection warrant for the Church's premises. Mancini agreed to allow Officer Jorgensen to inspect the premises about a week later. During the inspection, Officer Jorgensen noted that the premises looked largely the same, except that the "open" sign was turned off, there was no pricing information or signs about an ATM machine, some other office materials had been removed, and shelves in the "sacrament room" that were previously filled with cannabis products were empty.

About a week later, Officer Jorgensen returned to the Church without notifying Mancini. He noticed that the "open" sign was on and saw three people enter and exit the Church. Two of them left with a brown paper bag in hand. While monitoring the Church, Officer Jorgensen found a website that identified the Church as a cannabis dispensary.

Officer Jorgensen entered the premises and observed that the sacrament room had many items that were not there during the previous inspection. Among other things, Officer Jorgensen observed a cash register/sales tablet with cannabis product category names on the screen, a digital scale, plastic zip lock baggies with "Jah Healing" product

4

identification cards in them, brown paper bags, a spiral-bound phone call registry that appeared to have been used to prepare phone orders for pick-up and delivery orders, several mason jars with marijuana, a credit card processing machine that displayed "'JHC Church Mini ATM,'" and a separate VeriFone keypad.

Because the Church appeared to be operating an illegal dispensary, the County sought a preliminary injunction, which appellants did not oppose. The trial court issued a preliminary injunction enjoining appellants from using the Church's premises as a commercial cannabis dispensary.

Despite the foregoing, Mancini continued to operate the Church in a manner that the County considered to be an illegal commercial cannabis dispensary. During later inspections in March and April 2019, Officer Jorgensen observed that the Church's premises had not changed much. There were still cannabis products, a glass display cabinet, mason jars filled with marijuana and labels identifying the strain names, a sales computer tablet, a cash box, a small digital scale, a tip jar, and small brown paper bags. During one inspection, Officer Jorgensen observed a woman standing behind the cash register giving cash to a man in front of the register.

In May 2019, the County applied for an order holding appellants in contempt for violating the preliminary injunction. After an extensive, multi-day hearing, the trial court found that appellants had violated the preliminary injunction and thus found them in contempt. The trial court stayed its sentence pending appellants' compliance with the preliminary injunction.

5

About four months later, however, Officer Jorgensen conducted another inspection of the Church's premises. Officer Jorgensen observed a glass display case with various cannabis products. A Church employee stated that about 100-150 members visited the Church every day, but Mancini stated it was more likely about 75 members per day.

Mancini explained that the Church had made certain changes, such as asking new members to recite a videotaped prayer in order to receive blessed sacrament. According to Mancini, Church members did not need to donate any funds to receive sacrament, but donations were encouraged. And if a member wanted to give a donation, the member placed the donation in an envelope and could take change from a bowl if necessary. Once the money is placed in a "'tithing bowl,'" Mancini counted the money and used it for Church expenses.

The County applied for another order holding appellants in contempt for violating the preliminary injunction. During an extensive hearing, the trial court heard testimony from several County employees, including Officer Jorgensen and Department of Consumer Affairs Investigators Lauren Hannon and Faren Taffere. Hannon stated that she had investigated the Church's premises four times between October and November 2019 and consistently observed people entering the Church through the front door and exiting through the back door while carrying a brown paper bag. Hannon also learned that the Church did not have an appropriate state license to sell cannabis yet it was identified as a cannabis dispensary on various websites.

Hannon also conducted an undercover buy operation at the Church with Taffere. Taffere could not buy any cannabis products because the Church required her to consume some before purchase. Hannon decided to make a delivery purchase instead. After placing her order by phone, a Church employee delivered a package with what she had ordered along with a free edible cannabis product.

Like Hannon, Taffere investigated the Church premises on multiple occasions in October and November 2019. She also conducted an undercover buy (purchase). After she was let into the Church's premises, Taffere had to fill out paperwork and consume a cannabis product before making a purchase. Taffere asked if she could place a delivery order instead. A Church employee gave her a business card and told her to call the number on the card. Taffere later called and asked the Church employee who answered whether there was a minimum delivery fee. The employee said there was a minimum delivery fee of $35, but mentioned nothing about donations. Taffere placed an order for three $15 grams of marijuana, which was delivered to her in under an hour. Taffere paid the Church employee $45, and he handed her a brown paper bag with three grams of marijuana inside.

7

The trial court then heard testimony from two Church members, who testified that they received blessed sacrament from the Church for years without paying or donating anything. Mancini also testified that Church members may receive sacrament for free.

After continuing the hearing for about a month and receiving additional testimony at a January 2020 hearing, the trial court found appellants had again violated the preliminary injunction and held them in contempt for a second time. The trial court reinstated the previous contempt sentence, imposed another contempt sentence on appellants, sentenced Mancini to 10 days in county jail, and fined appellants $2,000 each.

The trial court later stayed the execution of the sentences and scheduled a trial in June 2020 on the County's request for a permanent injunction. The County timely served its trial brief on appellants, but counsel for appellants, Matthew Pappas, served the County with an incomplete brief. The County offered Mr. Pappas an extension, but he told the County that he would serve the complete brief soon, yet he never did.

Mancini and Mr. Pappas did not appear at the June 2020 hearing. The court called Mr. Pappas's office several times without success before reaching an employee who stated that they did not know the courts were still open given the COVID-19 pandemic.

The trial court began and completed the hearing without appellants or their counsel present. At its conclusion, the trial court lifted the stay on appellants' sentences, entered a permanent injunction,[2] fined appellants $50,000 each, ordered Mancini to appear in two weeks to be taken into custody, and awarded the County attorney's fees and costs.

Appellants later moved to set aside the judgment under Code of Civil Procedure section 473, subdivision (b) (section 473(b)) based on Mr. Pappas's excusable neglect. Mr. Pappas filed a declaration stating that he inadvertently missed the June 2020 hearing because he thought the court was closed due to the COVID-19 pandemic and he had a hearing on the same day in Santa Clara. The trial court denied the motion, and appellants timely appealed.

## III.

## DISCUSSION

Appellants contend the trial court erroneously denied their motion to vacate the judgment and that the judgment must be reversed because the County ordinance banning commercial cannabis activity violates state and federal law. We reject appellants' contentions and affirm the judgment.

---

[2] The injunction enjoins appellants from, among other things, engaging in "commercial cannabis activity," which is "defined as any enterprise or activity, whether or not for profit, gain or benefit, concerning the cultivation, production, storage, processing, manufacture, dispensing, delivery, distribution, laboratory testing, transportation, provision, or sale of cannabis or cannabis products, for medical purposes or otherwise to the extent not permitted under State law or the San Bernardino County Code."

A. *Motion to Vacate the Judgment*

Section 473(b) authorizes the trial court to vacate a dismissal, order, or judgment if it occurred because of the excusable mistake, inadvertence, surprise, or neglect of a party or its attorney. The statute "contains both mandatory and discretionary provisions," but only the discretionary provision is at issue. (*Huh v. Wang* (2007) 158 Cal.App.4th 1406, 1414.) We review the trial court's discretionary decision to grant or deny relief under section 473(b) for an abuse of discretion. (*Id*. at p. 1419.)

We find no abuse of discretion here. Section 473(b) states that an application for relief under the statute "*shall* be accompanied by a copy of the answer or other pleading proposed to be filed therein." (Italics added.) "The rationale for including the proposed document is to avoid further delays by compelling the delinquent party to demonstrate a readiness to proceed on the merits." (*Rodriguez v. Brill* (2015) 234 Cal.App.4th 715, 729.) This requirement is mandatory. (*Carmel, Ltd. v. Tavoussi* (2009) 175 Cal.App.4th 393, 401.) Thus, if a section 473(b) application is not accompanied by a proposed pleading, the "application *shall not* be granted." (§ 473, subd. (b), italics added; see also *Carmel, Ltd. v. Tavoussi*, *supra*, at p. 401.)

Appellants did not submit any proposed pleading (i.e., a trial brief) along with their section 473(b) motion. For that reason alone, the trial court did not abuse its discretion by denying the motion based on Mr. Pappas's failure to file a trial brief.

10

The trial court also properly denied appellants' section 473(b) motion because they failed to show any excusable neglect. They argue Mr. Pappas's failure to attend the June 2020 hearing, file a trial brief, or tell Mancini about the hearing amounts to excusable neglect under section 473(b).

We disagree. Excusable neglect exists when "a reasonably prudent person in similar circumstances might have made the same error." (*Huh v. Wang*, *supra*, 158 Cal.App.4th at p. 1424.) Appellants provide no compelling reason why Mr. Pappas could not have timely filed and served a trial brief, particularly when the County offered to grant him an extension. His failure to do so was inexcusable. (See *id*. at p. 1423 ["'Conduct falling below the professional standard of care, such as failure to timely object or to properly advance an argument, is not therefore excusable.' [Citation.]"].) Mr. Pappas's failure to attend the hearing or tell Mancini about it was also inexcusable because he could have easily confirmed whether the hearing would proceed despite court closures caused by the COVID-19 pandemic by calling the court or checking the docket. His failure to do so does not warrant relief under section 473(b). (See *id*. at pp. 1423-1424 ["Discretionary relief need not be granted for 'errors by [counsel]. . . in failing to calendar and appear' at a hearing."]; see also *id*. at p. 1424 [holding attorney's failure to oppose motion for summary judgment because he was "overwhelmed" by work and "disorganized" was not excusable].)

11

Here, the trial court expressly denied appellants' section 473(b) motion because Mr. Pappas's failure to file a trial brief and his and Mancini's failure to attend the June 2020 hearing did not affect the court's ruling. According to the trial court, even if Mr. Pappas's had filed a trial brief and he and Mancini had attending the hearing, the outcome would have been the same. Appellants offer no argument or evidence that suggests the trial court would have ruled differently had Mr. Pappas filed a trial brief and had he and Mancini attended the hearing. The trial court was therefore within its discretion to deny appellants' section 473(b) motion. (See *Todd v. Thrifty Corp.* (1995) 34 Cal.App.4th 991, 992 [trial court properly denied motion to vacate because there was "no basis for concluding that [attorney's] presence [at the hearing he missed] would have altered the outcome"].)

### B. *Judgment*

Appellants contend the judgment must be reversed on several state and federal law grounds. We find none of them persuasive.

#### 1. *State Law Preemption*

We first address and reject appellants' argument made in passing that the County's ordinance banning commercial cannabis activities is preempted by state law legalizing the sale of cannabis. "While permitting the use of marijuana, California law 'does not thereby *mandate* that local governments authorize, allow, or accommodate the existence of' marijuana dispensaries." (*City of Vallejo v. NCORP4, Inc.* (2017) 15 Cal.App.5th 1078, 1081.) California law "do[es] not 'limit the authority of a local jurisdiction to

adopt and enforce local ordinances to regulate' marijuana dispensaries 'or to completely prohibit' their 'establishment or operation.' (Bus. & Prof. Code, § 26200, subd. (a)(1).)." (*Id*. at p. 1082.) The County's ordinance is therefore not preempted by state law.

### 2. *Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA)*

Appellants' main argument is that the County's ordinance and the trial court's injunction enforcing it violate RLUIPA (42 U.S.C. § 200cc et seq.). We disagree.[3]

"RLUIPA provides that a government land-use regulation 'that imposes a substantial burden on the religious exercise of a ... religious assembly or institution' is unlawful 'unless the government demonstrates that imposition of the burden . . . is in furtherance of a compelling governmental interest; and is the least restrictive means of furthering that compelling governmental interest.'" (*Int'l Church of the Foursquare Gospel v. City of San Leandro* (9th Circ. 2011) 673 F.3d 1059, 1066 (*City of San Leandro*).) Appellants bear the initial burden of showing that the County's ordinance imposes a "substantial burden" on their religious exercise. (*Id*. at p. 1067; accord, *Chabad Lubavitch of Litchfield County, Inc. v. Litchfield Historic District Commission* (2d Cir. 2014) 768 F.3d 183, 192.).)

---

[3] Appellants argue, and the County disputes, that RLUIPA applies here and that the County's challenged ordinance is subject to strict scrutiny. We assume without deciding that appellants are correct.

"A substantial burden exists where the governmental authority puts '"substantial pressure on an adherent to modify his behavior and to violate his beliefs."'  [Citations.]" (*City of San Leandro*, *supra*, 673 F.3d at p. 1067.)  A substantial burden under RLUIPA "must place more than an inconvenience on religious exercise," and instead must be "akin to significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly." (*Midrash Sephardi, Inc. v. Town of Surfside* (11th Cir. 2004) 366 F.3d 1214, 1227.)

Appellants cannot show that the County ordinance imposes a substantial burden on their religious exercise.  The Church's only relevant religious practice is the use of blessed cannabis products, which its adherents consider to be their sacrament.  The County ordinance, however, does not prohibit appellants from possessing, blessing, or consuming cannabis products.  The ordinance bans only commercial cannabis activity, including selling and dispensing cannabis, whether for profit or otherwise.  As appellants acknowledge, "the provisioning of cannabis" is not a "religious activity" of the Church, its pastors, or its congregants.  Appellants thus concede that the County may prohibit the Church from selling cannabis or giving it out as part of a quid pro quo donation.

But appellants argue that the County may not prohibit the Church from giving its members free blessed cannabis unconnected to any payment, tithe, or donation.  The County concedes that the Church and its members "may possess, bless and use cannabis," but maintains that "[t]hey simply cannot sell and dispense it."

14

However, nothing in the ordinance prevents Church members from using or possessing blessed cannabis—the Church's only religious exercise at issue. Because Church members may still use and possess blessed cannabis under the County ordinance, the ordinance does not pressure or coerce them to modify their religious behavior in any way. The behavior the ordinance affects is the Church's selling, dispensing, and delivering of blessed cannabis, which appellants concede is not religious activity. The ordinance thus does not impose a substantial burden on their religious exercise. (See *City of San Leandro*, *supra*, 673 F.3d at p. 1067.) As a result, we conclude the ordinance does not violate RLUIPA.

The trial court's injunction, however, prohibits "commercial cannabis activity," which is defined as "any . . . activity, whether or not for profit, gain or benefit, concerning the . . . dispensing, delivery, distribution . . . of cannabis . . . for medical purposes or otherwise." The injunction thus arguably prohibits appellants from providing blessed cannabis to its members as part of a religious ritual. But the injunction also provides that appellants may engage in cannabis-related activity so long as it is "permitted under State law or the San Bernardino County Code."

We thus construe the injunction as allowing the Church to dispense free blessed cannabis to its adherents for immediate use as part of a bona fide religious ritual or ceremony. The Church may not, however, dispense, distribute, or deliver cannabis to its adherents for personal, non-immediate use outside of a bona fide religious ceremony.

15

### 3. *California Constitution*

Appellants next argue that the County ordinance violates article I, section 4 of the California Constitution (section 4). That provision provides in relevant part: "Free exercise and enjoyment of religion without discrimination or preference are guaranteed. This liberty of conscience does not excuse acts that are licentious or inconsistent with the peace or safety of the State."

The County argues the ordinance should be reviewed under rational basis review. Appellants, on the other hand, argue that we need not decide whether strict scrutiny or rational basis review is appropriate.[4] In appellants' view, the County violated section 4 because its actions reflect a "discriminatory animus targeted at the Church," which cannot survive any standard of review. Appellants therefore submit that "scrutiny review is unnecessary."

On its face, the ordinance is a neutral law of general applicability. (See *Catholic Charities of Sacramento* (2004) 32 Cal.4th 527, 549.) The County ordinance prohibits *all* commercial cannabis activity on unincorporated County property by *anyone*.

Appellants do not cite, and we cannot locate, anything in the record that suggests the County enforced the ordinance against appellants for a discriminatory reason. Rather, the evidence overwhelmingly shows that County enforced the ordinance against appellants only because the County believed (for good reason) that appellants had

---

[4] Appellants also fault the trial court for applying rational basis review in a tentative ruling and "[t]hereafter." They forfeited the argument by failing to support it with any record citations. (*In re S.C.* (2006) 138 Cal.App.4th 396, 406-407.)

16

violated the ordinance by running an illegal commercial cannabis dispensary. Nothing in the record suggests that the County sought to persecute the Church or discriminate against its members for their religious beliefs. We therefore conclude appellants failed to show that the County enforced the ordinance against the Church for discriminatory reasons, as they maintain, and thus they failed to show that the County violated section 4.

In any event, the ordinance survives strict scrutiny. "Under that standard, a law could not be applied in a manner that substantially burdened a religious belief or practice unless the state showed that the law represented the least restrictive means of achieving a compelling interest or, in other words, was narrowly tailored." (*Catholic Charities of Sacramento, Inc. v. Superior Court*, *supra*, 32 Cal.4th at p. 562.) As explained above, the County ordinance does not substantially burden appellants' religious beliefs or practices in any way. For that reason alone, the ordinance passes strict scrutiny review. (See *ibid*. ["[A] law substantially burdens a religious belief if it . . . 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs'"].)

4. *Tax Deductions*

Appellants alternatively argue that the ordinance is unconstitutional because Church members' financial contributions are tax-deductible under federal tax law. We disagree. Whether those contributions are tax-deductible does not affect whether the County may lawfully ban commercial cannabis activity on unincorporated County land. A transaction may be tax-deductible under federal tax law yet illegal under state law. (See *Commissioner of Internal Revenue v. Sullivan* (1958) 356 U.S. 27 [holding

17

operating expenses business illegal under state law were deductible for federal tax purposes].)  Appellants provide no authority that suggests that the tax-deductible status of its members contributions renders the County ordinance unenforceable.

Finally, appellants contend the ordinance does not apply to the Church's not-for-profit "quid pro quo" scheme where members receive sacrament for a tithe or donation because the ordinance does not expressly cover quid pro quo donations.  We disagree.  The ordinance prohibits, among other things, the "dispensing" and "distribution" of cannabis, "whether or not for profit."  By its plain terms, the ordinance covers the Church's quid pro quo scheme.

IV.

DISPOSITION

The judgment is affirmed.  The County may recover its costs on appeal.

CODRINGTON
J.

We concur:

McKINSTER
Acting P. J.

RAPHAEL
J.

18

Filed 10/5/22

CERTIFIED FOR PUBLICATION
COURT OF APPEAL -- STATE OF CALIFORNIA
FOURTH DISTRICT
DIVISION TWO

**<u>ORDER</u>**


COUNTY OF SAN BERNARDINO,                                    E075246
   Plaintiff and Respondent,


   v.

                                    (Super. Ct. No. CIVDS1825140)

APRIL ELIZABETH MANCINI et al.,
   Defendants and Appellants.                           ORDER CERTIFYING
                                    OPINION FOR PUBLICATION

_____


THE COURT

      Requests having been made to this court pursuant to California Rules of Court, rule 8.1120(a), for publication of a nonpublished opinion heretofore filed in the above matter on September 13, 2022, and it appearing that the opinion meets the standards for publication as specified in California Rules of Court, rule 8.1105(c),

      IT IS ORDERED that said opinion be certified for publication pursuant to California Rules of Court, rule 8.1105(b).  The opinion filed in this matter on September 13, 2022, is certified for publication.

      CERTIFIED FOR PUBLICATION


                                                <u>CODRINGTON</u>
                                                      J.



We concur:

<u>McKINSTER</u>
       Acting P. J.

<u>RAPHAEL</u>
         J.


1